UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
KIMYATTA MOSS and TOYLIN HENRY,

                Plaintiffs,

    — against —

RENT-A-CENTER, INC. and RICHARD TORA,

                Defendants.
----------------------------------------------------------------X

**MEMORANDUM and ORDER**

06 CV 3312 (SLT)(KAM)

**TOWNES, United States District Judge**[1]:

    Plaintiffs, Kimyatta Moss and Toylin Henry ("Plaintiffs"), bring this diversity action against their former employer, Rent-A-Center and Rent-A-Center employee, Richard Tora ("Defendants"), asserting claims of sexual harassment and retaliation in violation of New York State Human Rights Law and New York City Human Rights Law. In addition, Moss asserts tort claims of assault and battery against Tora, her supervisor at Rent-A-Center. Defendants move to dismiss the complaint pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ. P.") 12(b)(1) and/or 12(b)(6), or in the alternative, to stay these proceedings and compel arbitration, pursuant to the Federal Arbitration Act ("FAA"). For the reasons set forth below, Defendants' motion to compel arbitration and stay all proceedings pending arbitration is granted.

## BACKGROUND

    Plaintiffs were employed by Rent-A-Center from 2005 to 2006. (Compl. ¶¶ 8-11.) A few days after they commenced employment, Plaintiffs signed a "Mutual Agreement to Arbitrate Claims" ("arbitration agreement"). ((Kimyatta Moss Affidavit ("Moss Aff.") at ¶¶ 2, 8); (Toylin Henry Affidavit ("Henry Aff.") at ¶¶ 4, 7.)) Moss signed two arbitration agreements, one on

---

[1] The Court wishes to acknowledge the capable assistance of a student intern, Renee Morisa Williams of Fordham Law School, in the preparation of this Memorandum and Order.

April 7, 2005 and another on September 22, 2005.  (Richard Tora Affidavit ("Tora Aff.") at ¶ 3.)

Henry signed one arbitration agreement on December 21, 2005.  (Tora Aff. at ¶ 6.)

>In pertinent part, the arbitration agreement reads:
>
>The Company and I mutually consent to the resolution by arbitration of all claims or controversies ("claims"), past, present, or future, whether or not arising out of my application for employment, assignment/employment, or the termination of my assignment/employment that the Company may have against me or that I may have against any of the following: (1) the Company, (2) its officers, directors, employees, or agents in their capacity as such or otherwise . . . .
>
>The only claims that are arbitrable are those that, in the absence of this Agreement, would have been justiciable under applicable state or federal law. The claims covered by this Agreement include, but are not limited to . . . tort claims; claims for discrimination (including, but not limited to race, sex, sexual harassment, sexual orientation, religion, national origin, age, workers' compensation, marital status, medical condition, handicap or disability) . . . and claims for violation of any federal, state, or governmental law, statute, regulation, or ordinance . . . .
>
>Except as otherwise provided in this agreement, both the company and I agree that neither of us shall initiate or prosecute any lawsuit or administrative action (other than an administrative charge of discrimination to the Equal Employment Opportunity Commission, or a similar fair employment practices agency . . .) in any way related to any claim covered by this Agreement.
>
>(Ex. 1, p. 1; *see also* Ex. 3, p. 1.)

Each Plaintiff also signed and printed her name immediately beneath the prominently

displayed language of the agreement's acknowledgment provision, which states:

>I ACKNOWLEDGE THAT I HAVE CAREFULLY READ THIS AGREEMENT, THAT I UNDERSTAND ITS TERMS; THAT ALL UNDERSTANDINGS AND AGREEMENTS BETWEEN THE COMPANY AND ME RELATING TO THE SUBJECTS COVERED IN THE AGREEMENT ARE CONTAINED IN IT; AND THAT I HAVE ENTERED INTO THE AGREEMENT AND NOT IN RELIANCE ON ANY PROMISES OR PRESENTATIONS BY THE COMPANY OTHER THAN THOSE CONTAINED IN THIS AGREEMENT ITSELF.  I UNDERSTAND THAT BY SIGNING THIS AGREEMENT I AM GIVING UP MY RIGHT TO A JURY TRIAL.

>I FURTHER ACKNOWLEDGE THAT I HAVE BEEN GIVEN THE OPPORTUNITY TO DISCUSS THIS AGREEMENT WITH MY PRIVATE LEGAL COUNSEL AND HAVE AVAILED MYSELF OF THAT OPPORTUNITY TO THE EXTENT I WISH TO DO SO.

(Ex. 1, p. 4; *see also* Ex. 3, p. 5.)

Plaintiffs contend that they were not permitted to consult an attorney or take the arbitration agreement off the premises. (Moss Aff. at ¶ 5; Henry Aff. at ¶¶ 5, 6.) They further contend that they were informed that they would lose their jobs if they did not immediately sign the arbitration agreement. (Moss Aff. at ¶ 5; Henry Aff. at ¶ 6.) Plaintiffs signed the arbitration agreement without reading or understanding it. (Moss Aff. at ¶ 8; Henry Aff. at ¶ 7.) In addition, Henry contends that she signed the arbitration agreement within five minutes of receiving it. (Henry Aff. at ¶ 7.)

Tora signed Plaintiffs' arbitration agreements on the behalf of Rent-A-Center. He denies preventing Plaintiffs from reviewing their arbitration agreements, reviewing their arbitration agreements with an attorney, or from taking their arbitration agreements off the premises. (Tora Aff. ¶¶ 4-8.)

On January 6, 2006, Moss and Tora drove to Juniors Restaurant to discuss Moss' future employment at Rent-A-Center. (Compl. ¶ 9e.) Moss asserts that Tora informed her that she could keep her job only if he could "taste" her. (Compl. ¶ 9f.) He then offered to promote her within six months in exchange for sex. (*Id.*) He also forcibly slid his hands down her pants. (Compl. ¶ 9g.) Moss declined Tora's offer and never returned to the job. (Compl. ¶ 9f.)

In early January, 2006, one of Henry's male co-workers informed her that the managers thought she had engaged in a sexual relationship with him. (Compl. ¶ 11a.) Under the pretext that he was typing an order, that same co-worker would rub his body against Henry's. (Compl. ¶

3

11c.) According to Henry, he would lean his body over hers while touching her shoulders and back. (Compl. ¶ 11d.) On January 20, 2006, Henry reported to a supervisor that the co-worker was sexually harassing her. (Compl. ¶ 11e.) At the end of the day, that same supervisor told her not to return to work until an investigation of her sexual harassment claim had been completed. (Compl. ¶ 11f.) He also asked Henry to contact him three days later, on January 23, 2006, to ascertain the status of the investigation. (Compl. ¶ 11g.) When Henry contacted the supervisor on January 23, 2006, she was informed, without explanation, that her employment had been terminated. (Compl. ¶ 11h.)

## DISCUSSION

*A.*     *Standard of Review*

When a motion to compel arbitration is brought under the FAA, "the court applies a standard similar to that applicable to a motion for summary judgment." *Barbieri v. K-Sea Transp. Corp.*, No. 05-04950, 2006 WL 3751215, at *3 (E.D.N.Y. Dec. 19, 2006) (quoting *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003)). *See also DeBono v. Wash. Mut. Bank*, No. 05-10333, 2006 WL 3538938, at *2 (S.D.N.Y. Dec. 8, 2006). Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "A material fact is one that would 'affect the outcome of the suit under the governing law,' and a genuine issue of material fact occurs if the evidence is such that a 'reasonable jury could return a verdict for the nonmoving party.'" *Sea Carriers Corp. v. Empire Programs, Inc.*, No. 04-7395, 2007 WL 1467220, at *3 (S.D.N.Y. May 17, 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). As a result, the mere existence of

4

factual issues that are not material to the case will not suffice to defeat a motion for summary judgment. *See id.*

"The burden of demonstrating that no material fact exists lies with the party seeking summary judgment." *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005). The burden then shifts to the nonmoving party who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Mosely v. Island Computer Products, Inc.*, No. 04-2469, 2006 WL 318815, at *2 (E.D.N.Y. Feb. 9, 2006) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)). The nonmoving party must offer specific evidence to support its claim that a genuine issue of material fact exists. *See Fernandez v. CMB Contracting,* No. 05-3338, 2007 WL 1456220, at *2 (E.D.N.Y. May 16, 2007). In considering the motion, the court's responsibility "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Douglas v. First Unum Life Ins. Co.*, 465 F. Supp. 2d 301, 305 (S.D.N.Y. 2006) (quoting *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986), *cert. denied*, 480 U.S. 932, 107 S. Ct. 1570, 94 L. Ed. 2d 762 (1987)).

### B.     *Federal Arbitration Act*

Although Plaintiffs' claims of sexual harassment, and of assault and battery arise under New York law, the FAA preempts state and local law on the issue of enforceability of arbitration agreements. "Where the [statutory] right is predicated on a State or local statute rather than on a congressional enactment, it is undisputed . . . that the courts are obligated to draw an analogy to the equivalent Federal law, where possible, and to consider Congress's intentions with regard to the rights created by that law." *Fletcher v. Kidder, Peabody and Company, Inc.*, 81 N.Y.2d 623, 632, 619 N.E.2d 998, 601 N.Y.S.2d 686 (1993). The FAA evidences Congress' intention to enforce arbitration agreements. *See id.* "As a result, the burden is upon the party seeking to avoid arbitration of a statutory claim to show that Congress intended to preclude waivers of the right to judicial remedy for such claims."[2] *Id.*

The FAA "covers arbitration provisions that are contained in employment contracts and arbitration agreements . . . ." *Sinnett v. Friendly Ice Cream Corp.*, 319 F. Supp. 2d 439, 443 (S.D.N.Y. 2004). *See also Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 121 S. Ct. 1302, 149 L. Ed. 2d 234 (2001) (holding that employment contracts are covered by the FAA). The FAA provides that "an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (2003). "Section three of the FAA provides for a stay of legal proceedings when the court is

---

[2]New York Human Rights law claims are arbitrable. *See Fletcher*, 81 N.Y.2d at 638 (stating that an arbitration agreement is fully enforceable in disputes that fall within its terms, even where the underlying claim concerns an alleged breach of a local, State or Federal law barring racial or gender discrimination. ). Tort claims are also arbitrable. *See Collins & Aikman Prods. Co. v. Building Sys.*, 58 F.3d 16, 23 (2nd Cir. 1995) (stating that the mere fact that this is a tort claim, rather than one for breach of Contract, does not make the claim any less arbitrable).

satisfied that the issue is arbitrable under an arbitration agreement." *Sinnett*, 319 F. Supp. 2d at 443 (citing 9 U.S.C. § 3 (2003)). Absent a ground for revocation of the contract, the FAA mandates that district courts direct parties to proceed to arbitration regarding issues on which an arbitration agreement was signed. *See Sinnett*, 319 F. Supp. 2d at 443 (quoting *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 844 (2d Cir. 1987)).

In light of the FAA's strong policy in favor of rigorously enforcing arbitration agreements, the Second Circuit articulated a two-part test to determine arbitrability of claims that do not involve federal statutes. *See Ace Capital Re Overseas Ltd. v. Central United Life Ins. Co.*, 307 F.3d 24, 28 (2d Cir. 2002); *see also Baldeo v. Darden Rests., Inc.*, No. 04-2185, 2005 WL 44703, at *4 (E.D.N.Y. Jan. 11, 2005). A district court must examine each of the following: "(1) whether the parties agreed to arbitrate disputes at all; and (2) whether the dispute at issue comes within the scope of the arbitration agreement." *Ace Capital Re Overseas Ltd.*, 307 F.3d at 28 (citing *Hartford Accident & Indemn. Co. v. Swiss Reinsurance Am. Corp.*, 246 F.2d 219, 226 (2d Cir. 2001)).

### 1. *Agreement to Arbitrate*

Districts courts apply generally accepted principles of state contract law to determine whether there is an agreement to arbitrate. *See Rubin v. Sona Int'l Corp.*, 457 F. Supp. 2d 191, 195 (S.D.N.Y. 2006); s*ee also Elwell v. Google, Inc.*, No. 05-6498, 2006 WL 217978, at *3 (S.D.N.Y. Jan. 30, 2006). "Pursuant to New York law, 'a person who signs a contract is presumed to know its contents and to assent to them,'" unless he can show special circumstances that would relieve him of that obligation. *Arakawa v. Japan Network Group*, 56 F. Supp. 2d 349, 352 (S.D.N.Y. 1999) (quoting *Berger v. Cantor Fitzgerald Sec.*, 967 F. Supp. 2d 91, 93 (S.D.N.Y. 1993)). Therefore, an employee's failure to read an arbitration agreement would not

7

generally allow an employee to avoid the terms set forth in that arbitration agreement because there is a presumption that the employee knew the contents of that agreement and assented to them. *See Baldeo,* 2005 WL 44703, at *4. Each Plaintiff signed the "Mutual Agreement to Arbitrate Claims" and promised that "[t]he Company and I mutually consent to the resolution by arbitration of all claims or controversies . . . that the Company may have against me or that I may have against any of the following: (1) the Company, (2) its officers, directors, employees, or agents in their capacity as such or otherwise . . . ." (Ex. 1, p. 1; *see also* Ex. 3, p. 1.) Thus, Plaintiffs are bound by the arbitration agreement unless they can show special circumstances, such as unconscionability, which would prevent enforcement of the arbitration agreement.

An arbitration agreement that is unconscionable is unenforceable. *See Baldeo*, 2005 WL 44703, at *6 (citing *Brennan v. Bally Total Fitness*, 198 F. Supp. 2d 377, 381 (S.D.N.Y. 2002)). An unconscionable arbitration agreement is "one which is so grossly unreasonable or unconscionable in the light of the mores and business practices of the time and place as to be unenforceable according to its literal terms." *Gillman v. Chase Manhattan Bank*, 73 N.Y.2d 1, 10, 537 N.Y.S.2d 787, 534 N.E.2d 824 (1988). In other words, an arbitration agreement is unconscionable where there is "an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Gillman*, 73 N.Y.2d at 10 (quoting *Williams v. Walker-Thomas Furniture Co.*, 350 F.2d 445, 449 (D. C. Cir. 1965)). A court should adopt a "flexible" approach when examining all the facts and circumstances of a particular case but an employee still has to hurdle a high bar to establish the unconscionability of an arbitration agreement. *See Baldeo*, 2005 WL 44703, at *6.

    ***a.***    ***Procedural Unconscionability***

Under New York law, an arbitration agreement is unconscionable if it contains both procedural and substantive unconscionability. *See Gill v. World Inspection Network Int'l, Inc.*, No. 06-3187, 2006 WL 2166821, at *5 (E.D.N.Y. July 31, 2006). To determine whether there is procedural unconscionability, courts look at whether a party lacked meaningful choice. *See id.* Courts focus on evidence of high pressure or deceptive tactics, as well as disparity in bargaining power between the parties. *See Brennan v. Bally Total Fitness*, 198 F. Supp. 2d 377, 382 (S.D.N.Y. 2002).

Plaintiffs assert that they were threatened with loss of their jobs if they failed to sign the arbitration agreement, that they were not given time to consult an attorney regarding the arbitration agreement, and that they subsequently signed the arbitration agreement without reading or understanding it. Moss signed the arbitration agreement on *two* separate occasions without reading it and Henry signed the arbitration agreement within five minutes of receiving it. Even if all of Plaintiffs' assertions are true, they do not show procedural unconscionability. Both Moss and Henry signed the arbitration agreement in which they acknowledged that they read and understood the agreement, and that they were given an opportunity to discuss the agreement with an attorney. If Plaintiffs did not understand the form of the arbitration agreement or had questions about it, the burden was upon them to have their concerns addressed before placing their signatures on the agreement. *See Baldeo*, 2005 WL 44703, at *5 (citing *Gold v. Deutsche Aktiengesellschaft*, 365 F.3d 144, 149 (2d Cir. 2004)). In addition, mere inequality in bargaining power between an employer and employee is insufficient to render an arbitration agreement unenforceable. *See Cap Gemini Ernst & Young U.S. LLC v. Arentowicz*, No. 04-0299, 2004 WL 1386145, at *5 (S.D.N.Y. June 22, 2004) (citing *Arakawa*, 56 F. Supp. 2d at 352)). Thus, conditioning continued employment and promotion upon an agreement to arbitrate does not by

9

itself constitute unconscionability. *See Gruber v. Louis Hornick & Co.*, No. 02-5092, 2003 WL 21222541, at *2 (S.D.N.Y. May 23, 2003) (citing *Brennan,* 198 F. Supp. 2d at 383)).

Further, Plaintiffs' reliance upon *Brennan* is misplaced because *Brennan* is distinguishable from the instant case. The plaintiff in *Brennan* was asked to sign an arbitration agreement *after* she had already commenced a discrimination action against her employer. *See Brennan*, 198 F. Supp. 2d at 380. In addition, Brennan's employer utilized high pressure tactics to compel her to sign the arbitration agreement. *See Morales v. Rent-A-Center, Inc.*, 306 F. Supp. 2d 175, 182 (D. Conn. 2003). For instance, the employer gave Brennan no more than fifteen minutes to review the sixteen-page, single-spaced arbitration agreement and did not inform Brennan that the agreement would affect her pending sexual harassment claim. *Brennan*, 198 F. Supp. 2d at 383. Unlike Brennan, Moss and Henry did not face any high pressure tactics from Rent-A-Center. As a result, Plaintiffs failed to establish that they lacked a meaningful choice when they signed the arbitration agreement.

### b.     *Substantive Unconscionability*

"Substantive elements of unconscionability appear in the context of the contract per se . . . ." *Brennan*, 198 F. Supp. 2d at 382. A contract is substantively unconscionable where its terms are unreasonably favorable to the party against whom unconscionability is claimed. *See Desiderio v. NASD*, 191 F.3d 198, 207 (2d Cir. 1999), *cert. denied*, 531 U.S. 1069, 121 S. Ct. 756, 148 L. Ed. 2d 659 (2001). Generally, arbitration agreements that bind both parties do not favor the stronger party unreasonably. *See id*. Here this contract mutually binds both parties and may not be said to favor the stronger party unreasonably. *See id.* Nevertheless, Plaintiffs claim that the terms of the arbitration agreement unreasonably favor Rent-A-Center because the

10

agreement limits Plaintiffs to one deposition, and requires Plaintiffs and Rent-A-Center to split the fees and costs of arbitration.

### i.     Discovery

Plaintiffs claim that because the discovery process limits them to one deposition, there is a limited amount of proof they can gather for their case. However, the Supreme Court has held that limited discovery is an insufficient ground to invalidate an arbitration agreement. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 31, 111 S. Ct. 1647, 114 L. Ed. 2d 26 (1991); *see also Stewart v. Paul, Hastings, Janofsky & Walker*, *LLP*, 201 F. Supp. 2d 291, 292 (S.D.N.Y. 2002). The Supreme Court reasoned that, "[a]lthough those procedures might not be as extensive as in the federal courts, by agreeing to arbitrate, a party 'trades the procedures and opportunity for review of the courtroom for the simplicity, informality, and expedition of the arbitration.'" *Gilmer*, 500 U.S. at 31 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985)). *See also Ciago v. Ameriquest Mortgage Co.*, 295 F. Supp. 2d 324, 333 (S.D.N.Y. 2003). Although, the arbitration agreement limits Plaintiffs to one deposition, other means of discovery are at Plaintiffs' disposal. The arbitration agreement allows Plaintiffs to subpoena witnesses, and permits the arbitrator to order additional discovery, if necessary.

### ii.     Filing Fees

Plaintiffs also claim that the arbitration agreement requires them to pay filing fees, fifty percent of all other administrative fees, and one hundred percent of the arbitrator's fees when they are the movants on any motions. According to Plaintiffs, these cost-splitting fees are prohibitive. In *Green Tree Financial Corp. - Alabama v. Randolph*, 531 U.S. 79, 121 S. Ct. 513, 148 L. Ed. 2d 373 (2000), the Supreme Court suggested that large arbitration costs could

invalidate an arbitration agreement. *Id. See also Chamois v. Countrywide Home Loans*, No. 02-9550, 2003 WL 23022033, at *4 (S.D.N.Y. Dec. 29, 2003). The mere uncertainty of expense however, does not render an arbitration agreement unenforceable. *See Gambardella v. Pentec Inc.*, 218 F. Supp. 2d 237, 245 (D. Conn. 2002). The party who resists arbitration on the ground that it would be prohibitively expensive "bears the burden of showing the likelihood of incurring such costs." *Green Tree Financial Corp. - Alabama*, 531 U.S. at 91. *See also Stewart*, 201 F. Supp. 2d at 293.

Neither the Supreme Court nor the Second Circuit have elaborated on how detailed a showing of prohibitive fees needs to be to invalidate an arbitration agreement. *See E.E.O.C. v. Rapport, Hertz, Cherson & Rosenthal, P.C.*, 448 F. Supp. 2d 458, 462 (E.D.N.Y. 2006). The Fourth Circuit holds that in the context of employment discrimination, the proper inquiry for the court is a "case-by-case analysis that focuses, among other things, upon the claimant's ability to pay the arbitration fees and costs, the expected cost differential between arbitration and litigation in court, and whether that cost differential is so substantial as to deter the bringing of claims." *Bradford v. Rockwell Semiconductor Sys.*, 238 F.3d 549, 556 (4th Cir. 2001). Contrary to the Fourth Circuit, the Sixth Circuit holds that the "court must evaluate the likely cost of arbitration not in absolute terms, but *relative to the likely costs of litigation*." *Cooper v. MRM Inv. Co.*, 367 F.3d 493, 511 (6th Cir. 2004) (emphasis in original). Most District Courts in the Second Circuit follow the Fourth Circuit's rationale on how detailed a showing of prohibitive fees needs to be to invalidate an arbitration agreement. *See E.E.O.C.*, 448 F. Supp. 2d at 463.

In an attempt to demonstrate to the court how prohibitive arbitration fees will be, Plaintiffs provided the court with examples of the amount of filing fees they will be required to pay. According to Plaintiffs, the filing fee for each claim ranges from $750 to $10,000. Since

there are five claims, Plaintiffs argue that their filing fees are between $3,750 to $50,000, depending upon the value of each claim. Plaintiffs' arbitration agreement calls for arbitration under the auspices of the American Arbitration Association ("AAA") or the Judicial Arbitration & Mediation Services ("JAMS)." Other than Plaintiffs own assertions however, Plaintiffs have failed to provide any independent evidence from either of these associations that demonstrate that this is the range of filing fees Plaintiffs will be forced to pay. From Plaintiffs' example, the Court currently cannot ascertain the actual costs and fees that Plaintiffs would be required to pay.

Even if Plaintiffs' argument about the amount of filing fees they might incur is accurate, Defendants have agreed to pay all arbitration costs associated with this case. *See Chamois*, 2003 WL 23022033, at *4 (holding that employees failed to satisfy their burden of showing that prohibitive arbitration fees were likely because the employer offered to pay almost all of the costs of arbitration). Because Defendants have agreed to pay all arbitration costs associated with this case, Plaintiffs will not incur prohibitive fees as a result of arbitration.

### 2. *Scope of the Agreement*

"[A]s a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract itself or an allegation of waiver, delay, or a like defense to arbitrability." *Opals On Ice Lingerie, Designs by Bernadette, Inc. v. Bodylines Inc.*, 320 F.3d 362, 369 (2d Cir. 2003) (quoting *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-5, 103 S. Ct 927, 74 L. Ed. 2d 765 (1983)). Broadly phrased arbitration agreements create a presumption of arbitrability which is only overcome if the arbitration agreement is not susceptible to an interpretation that covers the dispute. *See Bank Julius Baer & Co. v. Waxfield Ltd.*, 424 F.3d 278, 284 (2d Cir. 2005). Parties must arbitrate claims if their underlying factual allegations

touch on issues encompassed by the arbitration agreement.  *See JLM Indus.*, 387 F.3d at 172; *see also Sherr v. Dell, Inc.*, No. 05-10097, 2006 WL 2109436, at *3 (S.D.N.Y. July 27, 2006).  The arbitration agreement between Plaintiffs and Defendants covers the following: "tort claims; claims of discrimination (including, but not limited to race, sex, sexual harassment, sexual orientation, religion, national origin, age, workers' compensation, marital status, medical condition, handicap or disability) . . . and claims for violation of any federal, state, or governmental law, statute, regulation, or ordinance . . . ."  (Ex. 1, pp. 1, 4; *see also* Ex. 3, pp. 1, 5.)  All of Plaintiffs claims – sexual harassment; and assault and battery – are covered under the arbitration agreement.  Therefore, Plaintiffs' claims are within the scope of the arbitration agreement.

## CONCLUSION

For the reasons set forth above, Defendants' motion to compel arbitration and stay all proceedings is GRANTED.  Defendants' request for attorneys' fees is DENIED.

SO ORDERED.

Dated: Brooklyn, New York
August 15, 2007

*Sandra L. Townes*
SANDRA L. TOWNES
United States District Judge